United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 2, 2005**

Charles R. Fulbruge III
Clerk

REVISED MAY 16, 2005

## In the
## United States Court of Appeals
## for the Fifth Circuit

———————

Nº 03-11299

———————



UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

FRANK PACO GUEVARA,

Defendant-Appellant.

———————————————————

Appeal from the United States District Court
for the Northern District of Texas

———————————————————

Before HIGGINBOTHAM, SMITH, and
BENAVIDES, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Frank Guevara challenges his conviction under 18 U.S.C. § 2332a of threatening to use a weapon of mass destruction ("WMD"). He also appeals his classification as a career of- fender under the sentencing guidelines. Fi- nally, he challenges his sentence in light of *Blakely v. Washington*, 124 S. Ct. 2531 (2004), and *United States v. Booker*, 125 S. Ct. 738 (2005).[1]  Finding no reversible error,

———————————————————

[1] The challenge pursuant to *Booker* is made in
(continued...)

we affirm.

## I.

Guevara committed what is called an "anthrax hoax." In August 2002 he wrote and mailed a letter to United States District Judge Mary Lou Robinson. An employee at the court's mail depository retrieved the letter and, recognizing that it was from an inmate, opened the envelope, which contained a white, powdery substance that got onto the employee's fingers. The letter stated:

> Mary Lou Robinson,
>
> I am sick and tired of your games[.] All [A]mericans will die as well as you. You have been now been [sic] exposure [sic] to anthrax.
>
> Mohammed Abdullah.

The substance in the envelope turned out to be harmless hair gel and powdered cleanser.

The incident effectively closed the federal building for a period of time. Local police with hazardous materials training, bomb squad personnel, and the FBI responded. The building's air conditioning had to be turned off. Judge Robinson (the target of the letter) shut down her courtroom. The federal building housed numerous federal agencies that were required to close for the rest of the day.

The government charged Guevara with (1) threatening to use a WMD in violation of 18 U.S.C. § 2332a and (2) mailing a threatening communication by way of the United States Postal Service in violation of 18 U.S.C. § 876. During trial, Guevara moved for judgment of acquittal at the close of the government's case and at the close of all of the evidence. His motions were denied, and the jury convicted him on both counts.

The presentence report ("PSR") classified Guevara as a career offender under the guidelines because he was over eighteen years of age at the time of the crime, he had at least two convictions for crimes of violence, and the probation officer characterized the § 2332a conviction as a crime of violence. Guevara objected to the career offender classification, arguing that the instant WMD conviction was not a crime of violence. The district court overruled his objection and, based on this classification, imposed a sentence of life imprisonment.[2]

## II.
### A.
#### 1.

We review the denial of a motion for judgment of acquittal *de novo*. *See United States v. DeLeon*, 170 F.3d 494, 496 (5th Cir. 1999). When reviewing the sufficiency of the evidence, we consider "'whether a reasonable trier of fact could have found that the evidence established the essential elements of the crime beyond a reasonable doubt.'" *United States v. Cathey*, 259 F.3d 365, 368 (5th Cir. 2001) (quoting *United States v. Ortega Reyna*, 148 F.3d 540, 543 (5th Cir. 1998)).

---

[1](...continued)
a supplemental letter brief filed at this court's request after *Booker* was announced.

---

[2] Guevara does not challenge his conviction under § 876. Given the statutory maximum punishment of life in prison under § 2332a, Guevara's offense level was raised from 27 to 37, and his criminal history category was raised from V to VI. These adjustments dictated a sentencing range of 360 months to life.

§ 2332a provides in relevant part:

A person who, without lawful authority, uses, threatens, or attempts or conspires to use, a weapon of mass destruction . . . (2) against any person within the United States, and the results of such use affect interstate or foreign commerce or, in the case of a threat, attempt, or conspiracy, would have affected interstate or foreign commerce . . . shall be imprisoned for any term of years or for life . . . .

When construing a criminal statute, we are bound by the plain and unambiguous meaning of its language. *See United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004). We look first to the words' ordinary and natural meaning and the overall policies and objectives of the statute. *See id.* We must seek to give every word in the statute some operative effect. *See id.*

2.

Guevara contends that to secure a conviction under § 2332a, the government must establish both that he made a "threat" and that it encompassed the "use" of a weapon of mass destruction. Guevara makes arguments that would, in the absence of preclusive authority, make closer the issue of whether "to threaten to use" requires an expression of intent to act in the future. There are plain-language and legislative history arguments that, in a vacuum, might lend credence to Guevara's interpretation.[3]

These arguments are nonetheless unavailing in light of *United States v. Reynolds*, 381 F.3d 404, 406 (5th Cir. 2004), *cert. denied*, 125 S. Ct. 922 (2005), in which we construed § 2332a to contain no requirement of future action:

We have found no credible support for a definition of "threat" that requires reference to a future act. We therefore conclude that the proper definition of "threaten" in § 2332a is that adopted by this court in *Myers*: a communication that has a reasonable tendency to create apprehension that [the] originator of the communication will act as represented.

In *Reynolds* the defendant, who was involved in a dispute with a mortgage company, told the company's telephone operator that he had just dumped anthrax into the air conditioning system. *Id.* at 405. Company security personnel ultimately deemed the threat to be noncredible and decided not to evacuate the building. Reynolds was nonetheless convicted under § 2332a for threatening to use a WMD.

On appeal Reynolds argued that he had not "threatened" to use a WMD because the statement in question conveyed only the completion of a past act. Citing *United States v. Myers*, 104 F.3d 76, 79 (5th Cir. 1997), we held that § 2332a's threat language does not require reference to a future act.[4] There is no reason

---

[3] Guevara points to legislative materials that suggest Congress perceived anthrax hoaxes to remain uncovered by existing laws. Those materials include (1) the fact that Congress recently enacted a law to punish them and (2) the fact that, except in very limited circumstances, the maximum pun-
(continued...)

---

[3](...continued)
ishment in that legislation is five years in prison.

[4] Guevara makes much of the fact that the statute says "to use," and he reads the "to use" language as requiring future action. Aside from the fact that *Reynolds* forecloses this interpretation, we remain skeptical of any earnest attempt to
(continued...)

able way to distinguish that ruling here.

Once we have interpreted § 2332a to have no future-action requirement, the evidentiary question is an easy one. Guevara claimed to have mailed anthrax, and the record is more

---

[4](...continued)
read too much into the "to use" language. To be sure, § 2332a is not a glittering example of statutory craftsmanship. Again, it reads:

> A person who, without lawful authority, uses, threatens, or attempts to use, a weapon of mass destruction . . . (2) against any person within the United States, and the results of such use affect interstate or foreign commerce or, in the case of a threat, attempt, or conspiracy, would have affected interstate or foreign commerce . . . shall be imprisoned for any term of years or for life . . . .

Guevara would distribute the phrase "to use" upstream in the sentence, applying it to the word "threaten," to get to the requirement that Guevara "threaten to use." Such distributive mechanics, however, would also require that "to use" be distributed upstream to the word "uses," a grammatical construction that leaves something to be desired.

That construction, however, is probably superior to the alternative, which is to decline to distribute "to use" upstream. This alternative construction would leave the statute an unintelligible law punishing any "person who, without lawful authority . . . threatens . . . a weapon of mass destruction." We are faced with the unenticing choice, on the basis of the "to use" language, between a construction that reads "uses . . . to use" and a construction that leaves the statute without a direct object. We therefore decline to refocus intensely on the "to use" language where *Reynolds* would seem to foreclose the question in any event. *See Reynolds*, 381 F.3d at 406 (explicitly contemplating the phrase "threaten to use").

than sufficient to sustain the conviction under our interpretation of the statutory language.

### B.

Although we ordinarily review jury instructions for abuse of discretion, we review an instruction *de novo* where there is the possibility that the jury instruction misstated an element of the crime, because that is an issue of statutory construction. *See United States v. Ho*, 311 F.3d 589, 605 (5th Cir. 2002). Guevara objected to the jury instruction indicating that the government did not have to prove that he actually intended or was able to carry out the threat. The district court instructed the jury as follows:

> A threat is a serious statement expressing an intention to do an act which under the circumstances would cause apprehension in a reasonable person, as distinguished from idle or careless talk, exaggeration, or something said in a joking manner. It is not necessary to prove that the defendant actually intended or was able to carry out the threat made.

We view this issue as redundant of that discussed in part II.A.2. If, as we have held both here and in *Reynolds*, a person can violate § 2332a merely by making a statement about completed action, and if, as we held in *Reynolds*, that threat need not be credible, there is no problem with the court's instruction regarding intent or plausibility.

### III.

Section 2332a requires the government to show that the use of a WMD, as threatened, would have affected interstate commerce. In *United States v. Wise*, 221 F.3d 140, 152 (5th Cir. 2000), we held that, in the case of a § 2332a threat, there need not be an actual or substantial effect on commerce.

4

## A.

The court erroneously instructed the jury that, to convict Guevara under § 2332a, it had to find that the WMD, if used as threatened, would have *substantially* affected interstate commerce; the statute requires only that the threat, if carried out, would have some effect, not necessarily a *substantial* one. The court instructed that "commerce" meant the "flow of goods, merchandise, money, or other property between states." The interstate commerce element was stated properly in the indictment.

Guevara argues that because the instructions mistakenly stated, without government objection, the degree of effect required on commerce, the "substantially affected" language became "law of the case," and the government had to prove it beyond a reasonable doubt. Although there is no binding precedent in this circuit, there is persuasive authority that guides our analysis.

In *United States v. Zanghi*, 189 F.3d 71, 79-80 (1st Cir. 1999), the court held that where a misstated element is included in the jury instruction, but not in the indictment, the misstated element does not necessarily become law of the case. Our court has held as much, albeit in an unpublished opinion. *See United States v. Munoz-Hernandez*, 94 Fed. Appx. 243, 245 (5th Cir. 2004) (unpublished), *vacated on other grounds*, 125 S. Ct. 999 (2005). We now adopt the First Circuit rule, to the effect that the "substantially affected" language does not become law of the case.[5] Consistent with the foregoing authorities, the

jury instruction may not become law of the case if both (1) it is patently erroneous and (2) the issue is not misstated in the indictment.

## B.

We review the interstate commerce element determination for sufficiency of the evidence by deciding whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See United States v. Daniel*, 957 F.2d 162, 164 (5th Cir. 1992). Without speculating unnecessarily as to the interstate commerce effects flowing from the successful release of anthrax spores, we conclude that Guevara's threat *actually* affected interstate commerce. The federal building was shut down for a day and a half; numerous federal agencies, including the DEA, experienced delay; and Judge Robinson's court (which handled diversity suits) was interrupted. These circumstances are more than enough for us to affirm on sufficiency of the evidence review.

## IV.
### A.

Guevara argues that his WMD conviction was incorrectly classified as a "crime of violence" under U.S.S.G. § 4B1.1. Before *Booker*, we reviewed a district court's interpretation and application of the sentencing guidelines *de novo*. See *United States v. Charles*, 301 F.3d 309, 312-13 (5th Cir. 2002) (en banc). Because these are questions of law, the same standard should control in the wake of *Booker*. "[W]hen a district court has imposed a sentence under the Guidelines, this court continues after *Booker* to review the district court's interpretation and application of the Guidelines de novo." *United States v. Villegas*, 404 F.3d 355, 359 (5th Cir. 2005) (per curiam).

---

[5] Guevara also argues that the "substantially affected" language is invited error. We are uncertain precisely what to make of this argument. The district court issued the jury instruction, and the government merely failed to object. Moreover, the government does not "complain" of the error.

5

B.

The guidelines define a "crime of violence" as any offense under federal or state law that is punishable by imprisonment for more than one year that

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is the burglary of a dwelling, arson, or extortion, involves the use of explosives or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4.B1.2(a). Because Guevara's conviction qualifies as a "crime of violence" under § 4B1.2(a)(1), we express no opinion as to whether it would qualify under § 4B1.2-(a)(2).

Section 2332a contains, as an element, the threatened use of a weapon of mass destruction. The jury was instructed, in relevant part, that to convict, it must find that "[Guevara], without lawful authority, knowingly and intentionally threatened to use a weapon of mass destruction" and that "the nature of the threat was to use the weapon against a third person within the United States." In other words, the jury instructions state precisely the requirements of the statute.

Given that we uphold the "threat" status of Guevara's anthrax hoax under *Reynolds*, the only determination we need make is whether, under the guidelines, WMD's are instruments of physical force within the meaning of § 4B1.2(a)(1); we have little problem concluding that they are. We need not look to the indictment, the facts, or anything other than the statute to determine whether § 2332a contains an element that qualifies Guevara's crime as a

crime of violence under the guidelines.

Other circuits have determined that mailing a threatening communication under § 876 constitutes a crime of violence under § 4B1.2-(a)(1). In *United States v. Left Hand Bull*, 901 F.2d 647, 649 (8th Cir. 1990), the court reasoned that, because of § 876's requirement that the communication threaten to injure the addressee or another third party, § 4B1.2(a)(1) was satisfied.

Reaching the contrary conclusion, moreover, would require us to say that the use of WMD's does not involve physical force. Guevara addresses this argument in a single sentence of his opening brief: "Here, none of the offenses speak to the use of 'force' or even threatened attempted force." We reject that illogical reasoning and conclude, categorically, that the WMD's at issue here involved physical force within the meaning of § 4B1.2(a)(1).[6]

V.

Guevara argues that, under *Blakely*, the district court sentenced him unconstitutionally according to facts not found by a jury and to which he did not stipulate. The Court directly addressed this issue in *Booker*.

Based solely on the facts adduced in the jury findings, the maximum sentence the district court could assess against Guevara was seventy-eight months.[7] Guevara asserts that

---

[6] We decline to engage in the more complicated analysis under § 4B1.2(a)(2), which under the "otherwise clause" would require us to consider risk posed by hypothetical conduct.

[7] Guevara's pre-adjustment maximum pursuant to the guidelines is calculated using the base of-
(continued...)

6

the court should not have increased the sentence by deciding that he (1) committed a crime of violence; (2) substantially disrupted governmental functions; and (3) chose his victim on account of her governmental status. On the basis of those circumstances, the court increased Guevara's maximum available sentence under the guidelines to life imprisonment for the § 2332a violation; the court then proceeded to impose that maximum sentence.

In *Booker*, the defendant was charged with possession with intent to distribute at least fifty grams of crack. *See Booker*, 125 S. Ct. at 746. Based on facts the court found by a preponderance of the evidence at a post-trial sentencing hearing, it imposed a sentence exceeding that which it could have imposed on the basis of the facts proven to the jury beyond a reasonable doubt.[8] *See id.*

_____

[7](...continued)
fense level of 20 as found in the PSR. Coupled with a criminal history Category V, this offense level yields a range of 63-78 months.

[8] Having heard evidence that he had distributed 92.5 grams of crack, the jury found Booker guilty of a statutory offense carrying a penalty of 10 years to life in prison. *See Booker*, 125 S. Ct. at 746. Based on his criminal history and the quantity of drugs found by the jury, the guidelines stipulate a sentencing range of 210-262 months. *See id.* In a post-conviction sentencing hearing the court found, according to a preponderance of the evidence, that Booker had possessed an additional 566 grams of crack and was guilty of obstructing justice. *See id.* That additional factfinding yielded, according to the guidelines, a sentence of 360 months to life in prison. *See id.* The court imposed a 30-year sentence, compared to d to the 21 years and 10 months that could have been meted on the basis of facts proven to the jury beyond a reasonable doubt. *See id.*

The Court made several key holdings in *Booker*. First, it found that mandatory sentencing based on facts not found by the jury violates the Sixth Amendment. *See id.* at 749-50. Second, it severed and excised the provisions that rendered the guidelines unconstitutional, specifically those making them mandatory.[9] *See id.* at 759-61. Finally, it instructed lower courts to apply ordinary prudential doctrines in determining whether the imposed sentence requires a vacatur and remand. *See id.* at 769.

Based on these directives, (1) the district court's mandatory sentence based on certain facts found exclusively in the sentencing proceeding violates the Sixth Amendment; (2) Guevara failed to preserve the error adequately, so his sentence is subject to plain error review; and (3) the error did not affect his substantial rights as required under the plain error standard. We therefore affirm the sentence.

A.

There is no Sixth Amendment violation with respect to post-trial consideration of career offender status. According to U.S.S.G. § 4B1.1(a),

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled

_____

[9] Specifically, the decision severs and excises 18 U.S.C. § 3553(b)(1) (Supp. 2004) and § 3742(e) (main ed. and Supp. 2004).

7

substance offense.

The question *Booker* answered in the affirmative was "[w]hether the Sixth Amendment is violated by the imposition of an enhanced sentence under the United States Sentencing Guidelines *based on the sentencing judge's determination of a fact (other than a prior conviction) that was not found by the jury or admitted by the defendant.*" *Booker*, 125 S. Ct. at 747 n.1 (emphasis added). Career offender status is not "a sentencing judge's determination of a fact other than a prior conviction." Aside from Guevara's age (a fact to which he stipulated in his competency report), the determinations made in the course of a career offender classification are all questions of law; in other words, they are precisely the determinations the above-quoted italicized language exempts.

Thus, *Booker* explicitly excepts from Sixth Amendment analysis the third component of the crime of violence determination, the fact of two prior convictions.[10]  The remaining determination necessary to classify a defendant as a career offender, then, is whether the current conviction constitutes a "crime of violence." That determination is in turn made

pursuant to § 4B1.2(a)-(b). Because Guevara's career offender status depends only on crime-of-violence (rather than controlled substance) convictions, we focus exclusively on § 4B1.2(a).

Section § 4B1.2(a)(1) instructs district courts to treat the offense of conviction as a crime of violence if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." By definition, then, a court cannot classify an offense as a crime of violence if a jury has not already found beyond a reasonable doubt the element of the offense on which that determination is predicated.

Section 4B1.2(a)(2) instructs courts to consider the instant offense a crime of violence if it is "burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." Our caselaw interpreting that provision has categorically forbidden courts from looking beyond the statute and the indictment in making this decision.[11]  Therefore, as is the case with § 4B1.2(a)(1), under § 4B1.2(a)(2) the sentencing court cannot base its crime-of-violence determination on anything beyond what is present in the statute or alleged in the indictment, elements as to which, to convict, the jury must have found evidence beyond a reasonable doubt in any event. As a consequence, the crime-of-violence determination is made exclusively pursuant to facts found by a jury, and Guevara's classification as a career offender is not in violation of the Sixth Amendment under *Booker*.

---

[10] One might argue that whereas *Booker* speaks in terms of the "fact" of prior convictions, the guidelines career offender determination involves the "character" of those convictions. To classify a defendant as a career offender under the guidelines, a court must determine that he has two prior felony convictions, both of which must be either (1) crimes of violence or (2) controlled substance convictions meeting certain specifications. Though we express no opinion on the factual versus legal character of finding the controlled substance violations, characterizing an offense as a crime of violence is a purely legal determination, as we will explain.

---

[11] *See, e.g., United States v. Calderon-Pena*, 383 F.3d 254 (5th Cir. 2004) (en banc), *cert. denied*, 125 S. Ct. 932 (2005).

B.

Guevara urges that two other judicially-found facts violated his Sixth Amendment rights: the findings that he substantially disrupted governmental functions and that he chose his victim on account of her governmental status. Guevara failed to raise this issue at the sentencing hearing, and ultimately did so only in a supplemental appellate brief after the Court decided *Blakely*.

In *United States v. Rios-Quintero*, 204 F.3d 214 (5th Cir. 2000), we addressed what standard of review to apply where a party briefed a claim on appeal but had not raised it in the district court because the Supreme Court had not yet issued the decision underlying the claim itself.[12] We concluded that the plain error standard of review was nonetheless appropriate for claims first raised on appeal where the relevant Supreme Court case was decided during the pendency of that appeal. *Id.* at 215. We thus apply a plain error standard to Guevara's Sixth Amendment claim.

Under plain error review, to correct an error not properly preserved, we must find (1) error (2) that is plain and (3) affects substantial rights.[13] "If all three conditions are met an appellate court may then exercise its discretion to notice a forfeited error but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Cotton*, 535 U.S. 625, 631 (2002). *See also United States v. Mares*, 402 F.3d 511, 520 (5th Cir. 2005)

(reiterating that this is the applicable standard in *Booker* cases where the error is not preserved), *petition for cert. filed* (U.S. Mar. 31, 2005) (No. 04-9517).

C.

1.

Under *Booker*, the Sixth Amendment was violated when the district court mandatorily adjusted Guevara's sentence on the basis of the remaining two questions of fact not found by a jury beyond a reasonable doubt. With respect to the first step in our plain error review, therefore, there was error. *See Mares*, *id.* at 520-21.

With respect to the second step, we assess whether an error is "plain" or "obvious" by reference to the law as it exists at the time of appellate consideration. *See Cotton*, 535 U.S. at 631-32). Again, *Booker* left no doubt as to the status of the error involved in mandatorily sentencing defendants pursuant to judge-found facts: Any case now on appeal, in which the court made factual findings pursuant to the guidelines, and where those findings were not implicit in the verdict or admitted by the defendant, involves a constitutional error that is plain under *Blakely* and *Booker*. *See Mares*, 402 F.3d at 521.

2.

The pivotal issue in Guevara's Sixth Amendment claim is therefore whether the obvious sentencing error affected his substantial rights. To have done so, it must have affected the outcome of the proceeding. *Id.* The defendant bears the burden of showing a probability that the error undermines confidence in the outcome. *Id.*

3.

The base offense level for violation of § 2332a(a)(2) is 20. *See* U.S.S.G. § 2M6.1.

---

[12] The Supreme Court case at the heart of the tardy party's claim in *Rios-Quintero* was *Jones v. United States*, 526 U.S. 227 (1999).

[13] *See United States v. Olano*, 507 U.S. 725, 732 (1993); *United States v. Calverley*, 37 U.S. 160, 162 (5th Cir. 1994) (en banc).

9

Guevara's total offense level was 27 after upward adjustments for substantial disruption of public, governmental, or business functions or services (+4), *see id.* § 2MG.1(b)(3)(i), and because the victim was a government officer or employee and the offense of conviction was motivated by such status (+3), *see id.* § 3A1.2-(a)(1)(A), (2).

According to § 4B1.1(b), the criminal history category of any career offender is VI. Also according to § 4B1.1(b), any career offender who is convicted of an offense with a maximum sentence of life under the substantive statute is assigned an offense level of 37. Based on a criminal history category of VI and a total offense level of 37, Guevara's guideline range is 360 months to life.

The rub is that the judge's post-trial fact-finding did not alter Guevara's career offender status, and if Guevara remains a career offender convicted under § 2332a, he would be in the same guideline range irrespective of whether the court found additional facts by a preponderance of the evidence. His career offender status yields a criminal history category of VI and a total offense level of 37 without regard to whether a judge or jury found that he (1) disrupted governmental functions and (2) targeted his victim on the basis of her governmental status.

We summarize this analysis as follows: Even if the guidelines were mandatory and Guevara could be sentenced only according to elements found by a jury beyond a reasonable doubt, his guidelines range would remain unchanged. As *Booker* instructs, however, the guidelines are merely "advisory." Because of Guevara's classification as a career offender, the guidelines would "advise" the same sentencing range irrespective of whether the adjustment circumstances existed.

Finally, because the district court sentenced Guevara to the maximum allowable punishment (life) under both the guidelines and § 2332a, and because the maximum sentence the court can impose, even post-*Booker*, remains limited to life by the terms of § 2332a, there is no reason to believe that the sentencing court would sentence Guevara any differently merely because the guidelines are advisory.

This analysis is reinforced by *Mares*, which states that "the pertinent question is whether [the defendant] demonstrated that the sentencing judge—sentencing under an advisory scheme rather than a mandatory one—would have reached a significantly different result." *Mares*, 402 F.3d at 521. "[T]he defendant rather than the government bears the burden of persuasion with respect to prejudice" in these determinations. *Id.* Here, as in *Mares*,

> [w]e do not know what the trial judge would have done had the Guidelines been advisory. Except for the fact that the sentencing judge imposed the statutory maximum sentence . . ., there is no indication in the record from the sentencing judge's remarks or otherwise that gives us any clue as to whether [the judge] would have reached a different conclusion.

*Id.* at 522. And again, as in *Mares*, "the defendant cannot carry his burden of demonstrating that the result would have likely been different had the judge been sentencing under the *Booker* advisory regime rather than the pre-*Booker* mandatory regime [, so] the defendant cannot satisfy the third prong of the plain error test." *Id.* We need not address Guevara's arguments regarding the other two enhancements, because he points to nothing in the record suggesting that they created a prejudicial *Booker* error.

10

The judgments of conviction and sentence
are AFFIRMED.

11